**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

DANIEL B. McDONALD,                    )
                                       )
      Plaintiff,                       )
                                       )
v.                                     )          Civil Action No. 08-cv-4088
                                       )
STRATA-G, LLC and DANIEL H.            )
HURST, Individually,                   )
                                       )
      Defendants.                      )

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF**
**PERSONAL JURISDICTION AND TO TRANSFER VENUE OR, IN THE**
**ALTERNATIVE, TO DISMISS**

**I.     Preliminary Statement**

Plaintiff Daniel B. McDonald ("McDonald") entered into a Consulting Agreement with

Defendant Strata-G, LLC ("Strata-G") in October 2003.  Strata-G is a Tennessee limited liability

company with offices in Knoxville, Tennessee. Defendant Daniel H. Hurst ("Hurst"), Strata-G's

President and also a citizen of Tennessee, signed the Consulting Agreement for Strata-G in

Tennessee.  McDonald received his last payment under the Consulting Agreement in Tennessee

on November, 2004.  Almost four years later, McDonald sued both Strata-G and Hurst in the

Circuit Court for Cook County, Illinois.   The Defendants removed the case to this Court,

McDonald having alleged under oath in his Complaint that he now is domiciled in Illinois and a

resident of Illinois.  The Defendants now move the Court to dismiss this civil action for lack of

personal jurisdiction as to Hurst, and transfer this civil action to the Eastern District of Tennessee

under section 1404(a) of title 28 of the United States Code or, in the alternative, to dismiss this

action based on *forum non conveniens*.

## II.    The Procedural Standard for this Motion

The procedural rules governing this Motion are Rule 12(b)(2) to the extent that the Defendants move to dismiss for lack of personal jurisdiction.  The motion to transfer venue is governed by Rule 12(b)(3) and 28 U.S.C. section 1404.  The motion to dismiss for *forum non conveniens* also rests on Rule 12(b)(3).

Federal Rule of Civil Procedure 12(b)(2) provides for dismissal of an action against a party over whom the court lacks personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  The plaintiff bears the burden of producing sufficient evidence to establish personal jurisdiction. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).  On a motion to dismiss for lack of personal jurisdiction, "all well-pleaded jurisdictional allegations in the complaint are accepted as true unless controverted by Declaration." *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004); *Zurich Capital Markets, Inc. v. Coglianese*, 2004 WL 2191596, at *3 (N.D. Ill. 2004).  A complaint need not include facts alleging personal jurisdiction; however, once a defendant moves to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating a *prima facie* showing of personal jurisdiction. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 781-82 (7th Cir. 2003); *Homer v. Jones-Bey*, 415 F.3d 748, 754 (7th Cir. 2005).  A plaintiff is "entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record," and the Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 877-78 (7th Cir. 2006).

To make such a *prima facie* showing, the Plaintiff must produce evidence to bring the defendants within the Illinois long-arm statute, which extends to the due process limits of the

2

Constitution. The Illinois long-arm statute identifies fourteen acts that may subject a person to personal jurisdiction in this State:

(1) The transaction of any business within this State;

(2) The commission of a tortious act within this State;

(3) The ownership, use, or possession of any real estate situated in this State;

(4) Contracting to insure any person, property or risk located within this State at the time of contracting;

(5) With respect to actions of dissolution of marriage, declaration of invalidity of marriage and legal separation, the maintenance in this State of a matrimonial domicile at the time this cause of action arose or the commission in this State of any act giving rise to the cause of action;

(6) With respect to actions brought under the Illinois Parentage Act of 1984, as now or hereafter amended, the performance of an act of sexual intercourse within this State during the possible period of conception;

(7) The making or performance of any contract or promise substantially connected with this State;

(8) The performance of sexual intercourse within this State which is claimed to have resulted in the conception of a child who resides in this State;

(9) The failure to support a child, spouse or former spouse who has continued to reside in this State since the person either formerly resided with them in this State or directed them to reside in this State;

(10) The acquisition of ownership, possession or control of any asset or thing of value present within this State when ownership, possession or control was acquired;

(11) The breach of any fiduciary duty within this State;

(12) The performance of duties as a director or officer of a corporation organized under the laws of this State or having its principal place of business within this State;

(13) The ownership of an interest in any trust administered within this State; or

(14) The exercise of powers granted under the authority of this State as a fiduciary.

735 ILCS 5/2-209.

Federal Rule of Civil Procedure 12(b)(3) provides that a party may move to dismiss an action when the action is not filed in a proper venue. Fed.R.Civ.P. 12(b)(3). Even if the court determines that this is a proper venue, a district court may transfer a civil action to another district if such a transfer is appropriate and if it is done "[f]or the convenience of parties and witnesses, [and] in the interest of justice...." 28 U.S.C. § 1404(a). In order to transfer a case pursuant to 28 U.S.C. section 1404(a), the transferor court, i.e., this Court, must first find that: (1) venue is proper in the transferor district, and (2) venue is proper in the transferee district.[1] *See Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986); 28 U.S.C. § 1404(a) (stating that transfer can only be made to a district in which the action "might have been brought"). The moving party has the burden of "establishing ... that the transferee forum is clearly more convenient." *Coffey*, 796 F.2d at 219. Because determining whether transfer is appropriate "involves a large degree of subtlety and latitude," it is "committed to the sound discretion of the trial judge." *Id.*

### III.        Argument

#### A.      Illinois Lacks Personal Jurisdiction over Hurst.

The burden falls upon the Plaintiff to produce evidence that this Court has personal jurisdiction over the Defendants. As to Defendant Hurst, the Plaintiff has failed to do so. The Complaint, which is verified, alleges that Hurst was President of Strata-G and resided in Knoxville. (The Plaintiff's Verified Complaint is attached hereto as **Exhibit 1**; see ¶ 2.) The Complaint alleges that Hurst offered McDonald a management position with Strata-G in August 22, 2003. (**Exhibit 1**, ¶ 2.) While the letter, attached to the Complaint as Exhibit A, is sent by Hurst in his capacity as Strata-G's President, that letter was sent to McDonald in Tennessee, not

---

[1] Venue is proper in this court per 28 U.S.C. § 1446(a). Venue is proper in the Eastern District of Tennessee per 28 U.S.C. § 1391(a).

4

Illinois. In paragraph 7 of the Complaint, McDonald alleges that he and Strata-G executed an Employment Agreement. **(Exhibit 1, ¶ 7.)** While the Complaint is silent on the point, McDonald and Strata-G thereafter executed a Consulting Agreement, a copy of which is attached as Exhibit A to the Declaration of Daniel H. Hurst. (The Declaration of Daniel H. Hurst is attached as **Exhibit 2**.) As that Declaration also establishes, both Agreements were finalized in Tennessee, not Illinois. **(Exhibit 2, ¶¶ 4-5.)** Neither agreement contains a forum selection clause. In paragraph 11 of the Complaint, McDonald alleges that Hurst asked McDonald to rent a post office box in Chicago for Strata-G. **(Exhibit 1, ¶ 11.)** Hurst disputes this, as is set forth in paragraph 8 of his Declaration and Exhibits C and D thereto. **(Exhibit 2, ¶ 8.)**

In Count III of his Complaint, McDonald alleges that Hurst breached a fiduciary duty allegedly owed him. The basis for McDonald's claims are that, in June 2008, Hurst willfully denied that McDonald had an equity interest in Strata-G, denied that McDonald was ever an employee of Strata-G, and directed Strata-G not to deliver 20% of its profits to McDonald. **(Exhibit 1, ¶ 33.)** These allegations all stem from the June 3, 2008, letter appended to the Complaint as Exhibit D. But Exhibit D is a letter from Strata-G's counsel in Tennessee, which states in the very first sentence that "[w]e represent Strata-G, LLC . . ." **(Exhibit 1, Exhibit D.)** The letter says nothing about Hurst, and simply shows that Strata-G's Tennessee counsel copied Hurst on the letter. Indeed, that letter from Strata-G's counsel was in response to the letter appended to the Complaint as Exhibit C, which is a letter to Hurst making a request of Strata-G.

The sum total of the jurisdictional allegations in the Complaint against Hurst is that, as Strata-G's President, Strata-G reimbursed McDonald for the rental of a post office box in Chicago at some unstated time in the past and that, in May 2008, McDonald's lawyer in Chicago

sent Hurst in Tennessee a letter making inquiry about Strata-G, which was referred to Strata-G's Tennessee counsel for a response.

Through his Declaration, Hurst has established that he does not now, and never has, resided in the State of Illinois. (**Exhibit 2,** ¶¶ 1-2; see also, **Exhibit 1,** ¶ 3.) Hurst owns no real estate in the State of Illinois. (**Exhibit 2,** ¶ 7.)   He has performed his duties as President of Strata-G, but Strata-G is not organized under the laws of Illinois. (**Exhibit 2,** ¶ 2.)   Strata-G is organized under the laws of Tennessee, as alleged in the Complaint, and, under Tennessee law, Hurst is not liable to McDonald for Strata-G's obligations, whether Hurst is sued as a member, a manager, an employee or an agent:

> (1) Except as provided in subsections (e) and (f), a member, holder of financial interest, governor, manager, employee or other agent of an LLC does not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities, or obligations of the LLC whether such arise in contract, tort or otherwise.

> (2) A member, holder of financial interest, governor, manager, employee or other agent of an LLC does not have any personal obligation and is not otherwise personally liable for the acts or omissions of any other member, manager, governor, employee or other agent of the LLC.

> (3) Notwithstanding the provisions of subdivisions (a)(1) and (a)(2), a member, holder of financial interest, governor, manager, employee or other agent may become personally liable in contract, tort or otherwise by reason of such person's own acts or conduct.

Tenn. Code Ann. § 48-217-101.

Further, Hurst does not have an ownership in any trust administered in this State and he has no powers granted to him under the authority of Illinois.  More broadly, Hurst has not engaged in any of the acts enumerated in the Illinois long-arm statute, as established by his Declaration.  (**Exhibit 2,** ¶ 7.)

Thus, McDonald's allegations of contacts by Hurst within the State of Illinois reduce to his assertion that Hurst asked McDonald to rent a post office box in Chicago.  This is not even

factually correct, as established by the Declaration of Daniel H. Hurst. (**Exhibit 2, ¶ 8.**)

However, if Hurst had himself rented the post office box in his own name, which he did not do,

this would not suffice to establish personal jurisdiction over Hurst. *TruServ Corp. v. Flegles,*

*Inc.*, 419 F.3d 584, 589 (7th Cir. 2005) ("It is also true that simply contracting with a party based

in Illinois is not enough to establish the required minimum contacts."), *citing Burger King Corp.*

*v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).  McDonald has thus

failed to bring Hurst within any of the provisions of the Illinois long-arm statute.

       Failing the long-arm statute's application, McDonald must demonstrate that this Court's

exercise of personal jurisdiction over Hurst would comport with due process.  He cannot do that.

Due process limits when a state may exercise personal jurisdiction over nonresident defendants.

*Asahi Metal Indus. Co. v. Superior Court of California*, 480 U.S. 102, 108, 107 S.Ct. 1026, 94

L.Ed.2d 92 (1987); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct.

559, 62 L.Ed.2d 490 (1980). This limitation allows potential defendants to structure their

contacts with different forums so as to plan where their business activities will and will not

render them liable to suit. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73, 105 S.Ct.

2174, 85 L.Ed.2d 528 (1985); *World-Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559.

Personal jurisdiction comes in two forms (so-called "general" and "specific" jurisdiction).

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d

404 (1984).  McDonald does not even attempt the impossible task of showing that Hurst is

subject to general personal jurisdiction in Illinois.

       To establish specific jurisdiction under the familiar "minimum contacts" analysis,

McDonald must show that Hurst has purposefully availed himself of the privilege of conducting

activities within Illinois, *see Asahi*, 480 U.S. at 108-09, 107 S.Ct. 1026; *Hanson v. Denckla*, 357

U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958), and that the exercise of personal jurisdiction over Hurst would comport with "traditional notions of fair play and substantial justice," *Asahi*, 480 U.S. at 113, 107 S.Ct. 1026; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

Hurst, a Tennessee citizen, serves as President of Strata-G, a Tennessee limited liability company. He lives in Tennessee. He works in Tennessee. Five years ago, acting on behalf of Strata-G, Hurst sent an offer on Strata-G's behalf to McDonald at a Tennessee address. (**Exhibit 2, ¶ 4.**)    McDonald and Strata-G thereafter entered into an Employment Agreement and a Consulting Agreement – in Tennessee. (**Exhibit 2, ¶ 5.**)    Acting on behalf of Strata-G, according to McDonald, Hurst thereafter asked McDonald to rent a post office box in Chicago. (Hurst disputes this). *Cf. Baseball Card World, Inc. v. Pannette*, 583 N.E.2d 753, 755 (Ind. App. 1991) (holding that the plaintiff did not establish jurisdiction where the non-resident defendant's "sole contact with Indiana consist[ed] of periodic telephone communications to place orders with [the plaintiff."). As Hurst's Declaration reflects, he also made one business trip to Chicago. (**Exhibit 2, ¶ 8.**)    These are not constitutionally sufficient "minimum contracts," they are one step above no contact at all.

Some four or five years later, a Chicago lawyer sent a letter to Hurst, making inquiry about Strata-G. Strata-G's Tennessee counsel responded to that letter. This letter is not a "purposeful availment" by Hurst of the privilege of conducting activities in Illinois; it is a courteous response to a request for information. McDonald has now sued Hurst in Illinois for what he considers to be a breach of Strata-G's obligations to him. McDonald cannot maintain his suit against Hurst under Tennessee law, but for purposes of this Motion Hurst certainly has not purposefully availed himself personally of the privilege of conducting activities within

Illinois and it would not comport with traditional notions of fair play and substantial justice for Hurst to be required to defend this lawsuit in Illinois.

Hurst should be dismissed from this civil action for lack of personal jurisdiction.

**B.    This Civil Action should be Transferred.**

The Court should also transfer this civil action to the federal district court for the Eastern District of Tennessee under 28 U.S.C. section 1404(a). There are several factors for the Court to consider in a transfer motion under section 1404(a) of title 28. Indeed, they are enumerated in the statute itself: "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In deciding whether transfer serves the private interests of the parties and witnesses, the court may consider a number of factors, including: "(1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease and access to the sources of proof; (4) the convenience of the parties; and (5) the convenience of the witnesses." *See First Nat'l Bank v. El Camino Resources, Ltd.*, 447 F. Supp.2d 902, 911-912 (N.D. Ill. 2006).

Of these factors, only the first weighs against transfer and then only barely so – McDonald's choice of an Illinois forum. However, the plaintiff's choice of forum is entitled less deference where the forum is not the situs of material events, i.e., where the business decision causing the alleged breach occurred. *Hyatt Corp. v. Pers. Comm. Indus. Ass'n*, 2004 WL 2931288, at *3 (N.D. Ill. Dec. 15, 2004)). Here, the Complaint is devoid of allegations that Strata-G or Hurst did or did not do anything in the State of Illinois.

In fact, as the Complaint and Hurst's Declaration establish, the situs of material events is not in Illinois; it is in Tennessee. Strata-G and Hurst are located in the Eastern District of

Tennessee and virtually all of Strata-G's books and records are in the Eastern District of Tennessee. (**Exhibit 2**, ¶ 9.) The Consulting Agreement and the Employment Agreement were formed in Tennessee.  McDonald alleges in paragraph 12 of his Complaint that he was paid $10,000 per month by Strata-G, but those payments were made out of Strata-G's office in the Eastern District of Tennessee and were sent to McDonald at his Tennessee address. (**Exhibit 2**, ¶ 10.)  McDonald was paid in Tennessee, not Illinois.  And, contrary to McDonald's sworn allegations, he was never an employee of Strata-G.  (**Exhibit 2**, ¶ 6.) Attached as Exhibit B to the Declaration of Daniel H. Hurst is a copy of the Form 1099 that was provided on McDonald's behalf by Strata-G, which refutes any claim that McDonald was an employee. (**Exhibit 2**, Exhibit B.) But, if he was an employee, it was of a Tennessee company.

McDonald also claims that he did not receive 20% of Strata-G's profits and demands an accounting.  But Strata-G is a Tennessee limited liability company, its outside accountants and chief financial officer and employees are located in the Eastern District of Tennessee. (**Exhibit 2**, ¶ 10.) (Knox County, Morgan County and Loudon County are all in the Eastern District of Tennessee, 28 U.S.C. § 123(a)(1), Northern Division, at Knoxville.).    All determinations of profit and how to distribute that profit and other financial calculations were made in the Eastern District of Tennessee by employees and agents who live in Tennessee, and not Illinois. (**Exhibit 2**, ¶¶ 2,3,9.) In paragraph 18 of his Complaint, McDonald alleges that Strata-G receives approximately $8 million in annual revenue, but all such revenue is received at Strata-G's office in the Eastern District of Tennessee. (**Exhibit 2**, ¶¶ 2,3,9.) McDonald claims that Hurst breached his fiduciary duty with the June 2008 letter from Strata-G's counsel, but that counsel is located in Knoxville, Tennessee, within the Eastern District of Tennessee.  (**Exhibit 1**, Exhibit D.)

10

The situs of material events is Tennessee, not Illinois, and this factor weighs heavily in favor of transfer. Moreoever, to the extent McDonald raises issues of corporate governance, the "internal affairs doctrine" provides that Tennessee law will provide the rule of decision. *See Newell Co. v. Peterson*, 758 N.E.2d 903 (Il Ct. App. 2001); *Sons of Confederate Veterans*, 2007 WL 1135459 (Tenn. Ct. App.)("Tennessee has long adhered to the "internal affairs" doctrine, under which matters involving the internal affairs of a foreign corporation are deemed substantive in nature and "should be resolved in accordance with the law of the state of incorporation.")(*citing* cases).

Because the situs of material events is Tennessee, not Illinois, it can be readily seen why two other section 1404(a) factors also indicate why transfer of venue is proper – the convenience of the parties and the relative availability of proof and witnesses. Here, there is at most one witness located in Illinois – McDonald. All other conceivable witnesses and documents are located in Tennessee. McDonald seeks an accounting – but Strata-G's books and records and employees and accountants are all in Knoxville. (**Exhibit 2, ¶ 9.**) Strata-G cannot force its accountants to travel to Chicago and they are well outside the subpoena power of this Court. *See* Fed. R. Civ. P. 45. Even if all these witnesses agreed to come to Chicago, the cost of such travel is not insubstantial and may be the subject of judicial notice. Nor should Strata-G be forced to bring its books and records to Chicago. McDonald has not – and likely cannot – identify any witnesses (other than himself) or any documents in the Northern District of Illinois material to this case. This factor alone mandates a transfer. Trying this case in the Eastern District of Tennessee is substantially more convenient than trying it in the Northern District of Illinois. Trying this case in Tennessee means one person—McDonald—must travel. Trying the case here

means that all of Strata-G's witnesses must travel here, with all the documents that may be required.

Nor is there any real inconvenience at all to McDonald from trying this case in Tennessee. Attached as Exhibit E to the Declaration of Daniel H. Hurst is a copy of the publicly available tax records from Loudon County, Tennessee (which is in the Eastern District of Tennessee, Knoxville Division). (**Exhibit 2**, Exhibit E.) This record reflects that McDonald owns property in the Eastern District of Tennessee, specifically at 418 Tanasi Way in Loudon and, as the Mapquest map attached as Exhibit F to Hurst's Declaration establishes, that residence is only 35 miles and 50 minutes from the federal courthouse in Knoxville. (**Exhibit 2**, Exhibit F.) Accordingly, there is no burden on McDonald by trying this case in the Eastern District of Tennessee where he evidently maintains a residence. It is difficult to reach a conclusion other than this case has been brought in Illinois for the purpose of inconveniencing Strata-G and Hurst.

Because substantially all of Strata-G's (and probably McDonald's) books and records and witnesses are located in Tennessee, litigating this case in Tennessee will be substantially more convenient than in Illinois. Absent voluntary cooperation, McDonald cannot depose a single witness or have a single document produced by a non-party witness pursuant to a subpoena issued by this Court. Every conceivable subpoena would instead be required to be issued by the Eastern District of Tennessee. Moreover, because this Court lacks personal jurisdiction over Hurst, if McDonald wishes to pursue his claims against Hurst, that claim would necessarily be required to be asserted in Tennessee. Thus, if this Court does not transfer venue, there are likely to be two civil actions, when one action in Tennessee is plenty.

Finally, a factor that the federal courts often consider in deciding a section 1404(a) motion is which forum is likely to be more familiar with the controlling law. Here, whether it is

the Employment Agreement or the Consulting Agreement that controls the outcome of McDonald's claims, both agreements were entered into in the State of Tennessee and will be governed by Tennessee law. *See*, e.g., *Obras v. Civiles, S.A. v. ADM Securities, Inc.*, 32 F.Supp.2d 1018 (N.D.Ill. 1999). In *Obras*, this Court noted that Illinois courts have adopted the Restatement (2d) of Conflict of Laws (1971), which directs that the following five factors be considered in determining choice of law in contract cases: (1) the place of contracting; (2) the place of negotiations; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, place of incorporation, and place of business of the parties. *Obras,* 32 F.Supp.2d at 1021. As noted in the Declaration, Tennessee was the place of contracting, the place of negotiations, the place of performance,[2] the location of the subject matter of the contract, and the domicile, residence, place of incorporation, and place of business of the parties.[3] The relationship between these parties was clearly centered in Tennessee and, as such, Tennessee law will apply. *Obras,* 32 F.Supp.2d at 1021.

Further, to the extent either forum renders a decision on the internal affairs of Strata-G, that decision will be governed by Tennessee law under the internal affairs doctrine noted above. While this Court is able to apply the law of any jurisdiction, the reality is that this Court is likely to be less familiar with Tennessee law than the federal district court in the Eastern District of Tennessee. *See Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 221 (7th Cir. 1986) ("it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law.").

This Court should transfer venue to the Eastern District of Tennessee.

---

[2] Tennessee serves as the only place of performance on the part of the Defendants, other places of performance (including Tennessee) exist as to McDonald.
[3] At the time of contracting, Tennessee fit this description as to all parties. McDonald may currently reside in Illinois but, as noted, also has a residence in Tennessee.

C.    **In the Alternative, The Court Should Dismiss for Forum Non Conveniens.**

If this Court does not transfer this civil action to the Eastern District of Tennessee, it should dismiss this civil action pursuant to Rule 12(b)(3) under the doctrine of *forum non conveniens*. Illinois (and the federal courts) recognize this doctrine, and the Illinois Supreme Court recently articulated the test in *Dawdy v. Union Pacific R.R.*, 797 N.E.2d 687 (2003):

> Although the forum non conveniens doctrine has a long history at common law, its general application crystallized following *Gulf Oil*. . . . Illinois courts employ the analytical framework of Gulf Oil in forum non conveniens cases. *See, e.g., Meyers v. Bridgeport Machines Division of Textron, Inc.*, 113 Ill. 2d 112, 118-19 (1986) . . . In *Gulf Oil*, the Court discussed private interest factors affecting the litigants and public interest factors affecting court administration. . . . A court must balance the private and public interests in determining the appropriate forum in which the case should be tried. Private interest factors include the convenience of the parties; the relative ease of access to sources of testimonial, documentary, and real evidence; the availability of compulsory process to secure attendance of unwilling witnesses; the cost to obtain attendance of willing witnesses; the possibility of viewing the premises, if appropriate; and all other practical considerations that make a trial easy, expeditious, and inexpensive. *See Cook v. General Electric Co.*, 146 Ill. 2d 548, 557 (1992) . . . The relevant public interest factors include: the administrative difficulties caused when litigation is handled in congested venues instead of being handled at its origin; the unfairness of imposing jury duty upon residents of a county with no connection to the litigation; and the interest in having local controversies decided locally. . . .

It can be readily seen that the private interest factors in the *forum non conveniens* calculus mirror the factors involved in a section 1404(a) transfer decision. Because these factors weigh in favor of transfer and thus also a dismissal for *forum non conveniens*, they will not be repeated here. Instead, the Defendants shall focus upon the public interest factors, which also favor dismissal.

It is plain that a jury would be empaneled in the Northern District of Illinois to decide a dispute that will involve testimony of numerous witnesses from Tennessee regarding a dispute with a Tennessee company over two contracts formed in Tennessee. This is not a local dispute; it is a Tennessee dispute, and the Northern District of Illinois has little interest in deciding this

14

dispute.  In fact, due to the relative congestion of the dockets, which is a proper consideration under *Dawdy,* this case should be dismissed.

Attached as **Exhibit 3** hereto is the latest available reports on the relative caseloads of the Northern District of Illinois and the Eastern District of Tennessee, taken from http://www.uscourts.gov/cgi-bin/cmsd2007.pl.  (The Court may also take judicial notice of this report on its own activity).  As the *Dawdy* case indicates, consideration of these sorts of administrative reports is appropriate in analyzing relative congestion.  As this report reflects, for the year ended September 30, 2007, 1756 civil cases were commenced in the Eastern District of Tennessee, while 1801 were terminated.  Simply stated, the backlog is decreasing in the Eastern District of Tennessee.  In the Northern District of Illinois, however, 8422 civil cases were commenced, while 7929 cases were terminated.  Thus, the Northern District of Illinois shoulders an annual caseload much larger than the Eastern District of Tennessee and its backlog is growing, while the Tennessee backlog is declining.  In short, there is a public interest in having the Eastern District of Tennessee decide this case rather that the relatively overburdened Northern District of Illinois.

In sum, the private and public factors weigh in favor of dismissal of this civil action for *forum non conveniens,* if the case is not transferred.

**IV.**        **Conclusion**

Hurst should be dismissed from this civil action for lack of personal jurisdiction.  Even if Hurst is not so dismissed, this civil action should be dismissed for *forum non conveniens* or transferred to the Eastern District of Tennessee.

Respectfully submitted,

**STRATA-G, LLC and DANIEL H. HURST**

/s/ John P. Lynch, Jr.
John P. Lynch, Jr.
**CREMER, KOPON, SHAUGHNESSY & SPINA, LLC**
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 980-3018

## CERTIFICATE OF SERVICE

I hereby certify that on July 24, 2008, a copy of the foregoing was filed electronically. Notice of filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access the filing through the Court's electronic filing system.

/s/ John P. Lynch, Jr.
John P. Lynch, Jr.

198350

08720                                MLM                           Firm I.D.  42890

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, LAW DIVISION

DANIEL B. MCDONALD,              )
                                 )     No.    08 L _____
        Plaintiffs,              )
                                 )     Amount Claimed:  Approximately
    vs.                          )       $648,000.00 plus interest, punitive damages
                                 )       and costs
STRATA G, LLC, and DANIEL H.     )
HURST, Individually,             )     JURY DEMANDED
                                 )
        Defendants.              )

### VERIFIED COMPLAINT

NOW COMES Plaintiff, DANIEL B. MCDONALD, by and through his attorneys, THE

ROTH LAW GROUP, LLC, and for his Verified Complaint against STRATA G, LLC, and

DANIEL H. HURST, Individually, states as follows:

### PARTIES

1.      Defendant STRATA G, LLC ("STRATA G"), is a Tennessee limited liability

company, and its principal office is located at 2027 Castaic Lane, Knoxville, Tennessee 37932.

At all times relevant hereto, Defendant STRATA G rented a post office box with an address of

207 East Ohio Street, Chicago, Illinois 60611.

2.      STRATA G has approximately 90 to 100 employees who are highly technical

people who specialize in being placed with STRATA G's clients such as the Department of

Energy on a short term basis to perform critical operations involving waste management,

logistics, compliance, and nuclear operations.

3.      At all times relevant hereto, Defendant DANIEL H. HURST was President of

STRATA G and resided in Knoxville, Tennessee.


EXHIBIT
tabbies
1

4.     At all times relevant hereto, Plaintiff DANIEL B. MCDONALD ("MCDONALD") was a senior vice president STRATA G and resided at 400 North McClurg Court, Unit 3202, Chicago, Illinois 60601.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this controversy because it involves the transaction of business within this State, the making and performance of a contract substantially connected to this State, the breach of a fiduciary duty within this State, and Plaintiff was domiciled within this State when the cause of action arose. *See* 735 ILCS § 5/2-209(a)-(b). Moreover, venue is proper in Cook County, Illinois as some or all of the transactions from which this cause of action arose took place in Cook County. *See* 735 ILCS § 5/2-101.

## FACTS

6.     On or about August 22, 2003, HURST offered MCDONALD a management position with STRATA G. *See* Letter dated August 22, 2003, attached hereto and marked as Exhibit "A."

7.     On or about August 26, 2003, MCDONALD accepted STRATA G's offer and STRATA G and MCDONALD executed an Employment Agreement. *See* Employment Agreement, attached hereto and marked as Exhibit "B."

8.     That Employment Agreement stated in relevant part that:

**Employment Terms and [C]onditions between Dan McDonald (employee) and Strata-G, LLC(company)**

. . .

**Compensation:**

**(a) Salary:** $10,000 per month subject to immediate increase in conjunction with employee billability or sales of projects that would justify and increase in salary.

2

**(b) Profit Sharing:**  20% of profits on all work brought in by the employee, paid at least annually.

**(c) Equity:** 7.5% of Strata-G on a going forward basis, not to include retained earnings of the company or funds in existing capital accounts of the company. . . .

*See* Exhibit "B" (emphasis in original).

9.    In or about October 2003, MCDONALD began working for STRATA G, and MCDONALD primarily served as the project manager on several proposals with potential clients that STRATA G wanted to pursue.

10.    For example, STRATA G submitted a proposal to WM Recycle America, which was a Chicago-based division of Waste Management, Inc. that handles recyclable commodities. MCDONALD spearheaded the successful proposal for STRATA G, which lead to a STRATA G employee being placed at WM Recycle America as project manager from approximately January 2004 until December 2004.

11.    STRATA G received approximately $20,000.00 in fees a month from WM Recycle America.  As a result, HURST asked MCDONALD to rent a Chicago post office box for STRATA G in order to facilitate STRATA G's receipt of invoices related to the contract that STRATA G won with WM Recycle America.

12.    MCDONALD was paid $10,000.00 per month by STRATA G for approximately a year.

13.    MCDONALD has never received 20% of the profits from the work that he brought to STRATA G.

14.    Shortly thereafter, in or about October 2004, MCDONALD began to only work for STRATA G intermittently, and he no longer received a monthly salary from STRATA G.

Going forward, MCDONALD continued to advise STRATA G and HURST on an as needed basis and would participate in projects and proposals with STRATA G when requested until approximately February 2007.

15.    On or about May 14, 2008, MCDONALD demanded an accounting of STRATA G in order to potentially liquidate his equity interest in the company. *See* Letter dated May 14, 2008, attached hereto and marked as Exhibit "C."

16.    On or about June 3, 2008, STRATA G responded that MCDONALD never was granted an equity interest in the company and refused to conduct an accounting. *See* Letter dated June 3, 2008, attached hereto and marked as Exhibit "D."

17.    On information and belief, further demands for an accounting would be futile.

18.    On information and belief, STRATA G receives approximately $8,000,000.00 in revenue annually.

## COUNT I
## BREACH OF CONTRACT AGAINST STRATA G

19.    Plaintiff MCDONALD repeats and re-alleges Paragraphs 1 through 18 of his Verified Complaint as though re-alleged herein.

20.    MCDONALD and STRATA G entered into a valid, written contract ("Employment Agreement"). *See* Exhibit "B."

21.    The Employment Agreement imposed an implied obligation of good faith on the Parties in their performance and enforcement.

22.    MCDONALD fully performed his obligations under the Employment Agreement by expanding the capabilities of STRATA G's waste management and professional services practice and by participating in numerous proposals that STRATA G was pursuing.    Thus,

4

MCDONALD fully completed performance of his contractual obligations under the Employment Agreement.

23.     STRATA G materially breached the Employment Agreement by: (a) never delivering to MCDONALD 20% of the profits from the work that he brought to STRATA G; (b) refusing to give MCDONALD an accounting of STRATA G; and (c) denying MCDONALD's 7.5% equity interest in the company.

24.     As a direct and proximate result of STRATA G's material breach of the Employment Agreement, MCDONALD has experienced the following estimated damages: (1) $48,000.00 representing 20% of STRATA G's profits from WM Recycle America; and (2) $600,000.00 representing 7.5% of $8,000,000.00.

25.     Finally, STRATA G's failure to tender payment to MCDONALD constitutes an unreasonable delay of payment as set forth in the Illinois Code of Civil Procedure. 815 ILCS § 205/2. Thus, MCDONALD is entitled to pre-judgment interest at the rate of five percent (5%) per annum on all monies withheld due to an unreasonable delay of payment. 815 ILCS § 205/2.

WHEREFORE, Plaintiff, DANIEL B. MCDONALD, prays for judgment against Defendant, STRATA G, LLC, as follows:

A.  Judgment in an amount not less than $648,000.00 plus interest and costs to be determined at trial; and

B.  Such other relief as this Court deems just and fair.

### COUNT II
### ACTION FOR ACCOUNTING AGAINST STRATA G

26.     Plaintiff MCDONALD repeats and re-alleges Paragraphs 1 through 25 of his Verified Complaint as though re-alleged herein.

27.    When MCDONALD and STRATA G executed the Employment Agreement, MCDONALD received a 7.5% equity interest in STRATA G. *See* Exhibit "B" at ¶ 3. Thus, MCDONALD became a joint owner of STRATA G.

28.    On or about May 14, 2008, MCDONALD demanded an accounting of STRATA G, and it refused to conduct an accounting. *See* Exhibits "C" and "D." On information and belief, further demands for an accounting would be futile.

29.    As MCDONALD has been denied an accounting, MCDONALD cannot ascertain with certainty the value of his equity interest, thus, cannot potentially liquidate his position in the company or ascertain his damages. Therefore, MCDONALD's request for accounting should be granted in equity because he has no adequate remedy at law for such accounting.

WHEREFORE, Plaintiff, DANIEL B. MCDONALD, respectfully requests that this Honorable Court enter an Order against Defendant, STRATA G, LLC, as follows:

A. Compelling STRATA G, LLC to account as to all revenues, costs, and profits since August 26, 2003;

B. Ordering STRATA G, LLC to pay to Plaintiff the sums found due for his 7.5% equity interest on the accounting; and

C. Such other relief as this Court deems just and fair.

## COUNT III
### BREACH OF FIDUCIARY DUTY AGAINST DANIEL H. HURST

30.    Plaintiff MCDONALD repeats and re-alleges Paragraphs 1 through 29 of his Verified Complaint as though re-alleged herein.

31.    HURST owed MCDONALD a fiduciary duty as they were fellow owners and officers in STRATA G, which was a closely held company.

32.    As such, a fiduciary relationship arose between HURST and MCDONALD as a

matter of law, which included a duty of loyalty.

33.    HURST breached his fiduciary duty to MCDONALD when he willfully:   (1)
denied that MCDONALD was granted an equity interest in STRATA G in June 2008;  (2) denied
that MCDONALD was ever an employee of STRATA G in June 2008, (3) directed STRATA G
not to deliver to MCDONALD 20% of STRATA G's profits from WM Recycle America;  and
(4) induced MCDONALD to continue advising HURST regarding STRATA G on an as needed
basis and participating in projects and proposals with STRATA G when requested intermittently
from approximately October 2004 until February 2007 without receiving a monthly salary from
STRATA G or 20% profit sharing by falsely asserting that he recognized that MCDONALD was
a 7.5% equity owner of the company.

34.    As a direct and proximate result of HURST's breach of his fiduciary duty,
MCDONALD has been deprived of his 7.5% equity interest in STRATA G that MCDONALD
estimates is worth approximately $600,000.00 and $48,000.00 representing 20% of STRATA
G's profits from WM Recycle America.

WHEREFORE, Plaintiff, DANIEL B. MCDONALD, prays for judgment against
Defendant, DANIEL H. HURST, as follows:

A. Judgment in an amount not less than $648,000.00 plus interest and costs to be
   determined at trial;

B. Punitive damages;  and

C. Such other relief as this Court deems just and fair.

Respectfully submitted,

By: _____
    One of Plaintiff's Attorneys

7

Karl W. Roth
Michelle L. Martin
THE ROTH LAW GROUP LLC
Attorneys for Plaintiff
111 W. Washington St., Ste. 1437
Chicago, IL 60602
(312) 419-9599
Firm I.D. 42890

## <u>VERIFICATION</u>

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned, DANIEL B. MCDONALD, certifies that the statements set forth in the foregoing instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that the undersigned verily believes them to be true.

_____
DANIEL B. MCDONALD

8



110 Perimeter Park, Suite F • Knoxville, TN 37922 • (865)539-2077

www.StrataG.org

August 22, 2003

Mr. Dan McDonald
Tellico
Loudon, TN 377xx

Dear Dan,

I am pleased to offer you a position with Strata-G, LLC. The purpose of this letter is to formalize our offer to you to join Strata-G and to set forth our initial expectations regarding your position.

Our expectation is that you will increase the overall value of Strata-G because of your technical and managerial experience as well as your professional credibility and network. Your initial objective will be to assist us with growing our business in general while also assisting with the development of a winning strategy for the Portsmouth, OH ER Project.

The title of your position is flexible and I would like to work with you to identify a title that best describes your capabilities and area of focus.

Your initial compensation will be paid at the rate of $10,000 per month beginning on our about October, 2003.

You will initially report to me as a member of the Strata-G management team.

Details of the offer are contained in the attachment to this letter and form the basis of our offer.

We are very fortunate and very pleased that you are giving serious consideration to joining the Strata-G team Dan. Thank you for all that you have already done to assist us.

If you have any questions, I can be reached at 865-539-2077. We hope that we can create a mutually beneficial arrangement to help you decide that Strata-G is the best place for you to continue your successful career.

Sincerely,

Dan Hurst
President
Strata-G, LLC

Attachment

*"Success begins with strategy."*

EXHIBIT
A

**Employment Terms and conditions between Dan McDonald (employee) and Strata-G, LLC(company).**

**1. Purpose of position:** To expand the capabilities of Strata-G's waste management and professional services practice and develop other opportunities to sell core competencies of company, consistent with strategic and tactical plans of the company.

**2. Approach:** Understand company mission, core values, readily available capabilities, and potential capabilities, strategic plans and vision. Develop target list of potential clients. Meet with potential clients to understand their needs and potential opportunities. Develop proposals to satisfy client needs. First 30 days will focus on developing a plan for marketing services and developing a revenue stream for the employee.

**3. Compensation:**

**(a) Salary:** $10,000 per month subject to immediate increase in conjunction with employee billability or sales of projects that would justify an increase in salary.

**(b) Profit Sharing:** 20% of profits on all work brought in by the employee, paid at least annually.

**(c) Equity:** 7.5% of Strata-G on a going forward basis, not to include retained earnings of the company or funds in existing capital accounts of the company.

**4. Benefits:**
**(a) Insurance:.** Employee will have the option to participate in company health, life, and long-term disability insurance program.

**(b) Bonus Program:** Employee is eligible to participate in the Bonus Program.

**5. Performance reviews:** Based on mutually agreed performance measures and goals, at 3mo, 6mo and 12 mo and annually thereafter. Initial performance plan will focus on approach and goals for establishing employee's desired career path.

**6. Resources:** Company will provide appropriate communications and computer equipment to support the employee's position as well as customary office equipment and supplies.

**7. Title:** To be determined upon mutual agreement between employee and company.

**8. Start Date:** On or about October 2003.

**Employer:**

Strata-G
110 Perimeter Park, Suite F
Knoxville, TN  37922

By: _____
        Dan Hurst

**Employee:**

Employee Signature: _____

Date: _____

**Employment Terms and conditions between Dan McDonald (employee) and Strata-G, LLC(company).**

**1. Purpose of position:** To expand the capabilities of Strata-G's waste management and professional services practice and develop other opportunities to sell core competencies of company, consistent with strategic and tactical plans of the company.

**2. Approach:** Understand company mission, core values, readily available capabilities, and potential capabilities, strategic plans and vision. Develop target list of potential clients. Meet with potential clients to understand their needs and potential opportunities. Develop proposals to satisfy client needs. First 30 days will focus on developing a plan for marketing services and developing a revenue stream for the employee.

**3. Compensation:**

**(a) Salary:** $10,000 per month subject to immediate increase in conjunction with employee billability or sales of projects that would justify an increase in salary.

**(b) Profit Sharing:** 20% of profits on all work brought in by the employee, paid at least annually.

**(c) Equity:** 7.5% of Strata-G on a going forward basis, not to include retained earnings of the company or funds in existing capital accounts of the company.

**4. Benefits:**
**(a) Insurance:.** Employee will have the option to participate in company health, life, and long-term disability insurance program.

**(b) Bonus Program:** Employee is eligible to participate in the Bonus Program.

**5. Performance reviews:** Based on mutually agreed performance measures and goals, at 3mo, 6mo and 12 mo and annually thereafter. Initial performance plan will focus on approach and goals for establishing employee's desired career path.

**6. Resources:** Company will provide appropriate communications and computer equipment to support the employee's position as well as customary office equipment and supplies.

**7. Title:** To be determined upon mutual agreement between employee and company.

**8. Start Date:** On or about October 2003.

**Employer:**

Strata-G
110 Perimeter Park, Suite F
Knoxville, TN 37922

By: _____
        Dan Hurst

**Employee:**

Employee Signature: _____

Date: 2CAOG. 2003

EXHIBIT
B

# ⬥RLG⬥ ROTH LAW GROUP, LLC

May 14, 2008

*Via Facsimile & Certified Mail*
(865) 934-3439

Mr. Daniel Hurst
President
Strata-G, LLC
2027 Castaic Lane
Knoxville, TN 37932

       RE:    Dan McDonald - Strata-G, LLC
                Employment Agreement dated August 22, 2003
                Our File No.: 08720

Dear Mr. Hurst:

My name is Karl W. Roth and my Law Firm serves as general counsel for Dan McDonald and his various business entities. My Firm is currently in the process of evaluating Mr. McDonald's business interests in an effort to facilitate consolidation, or alternatively liquidation, of his positions in those businesses, thus the reason for my letter.

I am in possession of an Employment Agreement dated August 22, 2003, executed by yourself and Mr. McDonald on or about August 26, 2003. See Employment Agreement, attached hereto as Exhibit "A." In the Agreement, you set forth Mr. McDonald's compensation as part of the Strata-G management team beginning "on or about October 2003." This compensation consists of a monthly salary of $10,000.00 along with a profit sharing plan of "...20% of profits on all work brought in by the employee, paid at least annually." There is also reference to eligibility to participate in a separate "Bonus Program," though its terms are undefined. In addition to this compensation, the Agreement also grants Mr. McDonald a 7.5% equity position in Strata-G.

In our capacity as general counsel, Mr. McDonald has granted us authority to make inquiries on behalf of himself and his various business entities. See Authorization of Dan McDonald, attached hereto as Exhibit "B." Consequently, I ask that you refrain from contacting Mr. McDonald as he has directed us to prepare our evaluation independent of his involvement to ensure transparency and unbiased disclosure. To that end, please allow this letter to serve as our request to Strata-G for documentation evidencing compensation owed Mr. McDonald under the Agreement along with a valuation of his equity position.

I ask that you kindly forward this information to my office by Friday, May 23, 2008 so that we may expedite our evaluation and advise Mr. McDonald accordingly. Please feel free to contact me at 312-419-9599 should you wish to discuss the availability of the requested documentation or if you require further information.

---

EXHIBIT
C

Mr. Daniel Hurst
May 14, 2008
Page 2 of 2

Very truly yours,

THE ROTH LAW GROUP LLC

Karl W. Roth

KWR/ns

Enclosures

WAGNER, MYERS & SANGER

A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
1801 FIRST TENNESSEE PLAZA
KNOXVILLE, TENNESSEE 37929

HERBERT S. SANGER, JR.*
CHARLES W. VAN BEKE
WILLIAM C. MYERS, JR.
M. DOUGLAS CAMPBELL, JR.
ROBERT E. HYDE
MARTIN B. BAILEY
KATHLEEN FLYNN ZITZMAN**
NICHOLAS A. DELLA VOLPE
BARBARA D. BOULTON
RONALD D. GARLAND
JOHN L. MILLER
DAVID P. WRIGHT
MARK N. FOSTER
DEBORAH L. BUCHHOLZ
STEPHEN T. MEALOR***
JOHNATHAN K. BORSODI

DIRECT FAX:
(865) 291-0419

E-mail address
dcampbell@wmspc.com

June 3, 2008

P.O. BOX 1308
KNOXVILLE, TENNESSEE 37901-1308

TELEPHONE
(865) 525-4600

FACSIMILE
(865) 524-5731
(865) 291-0419

OF COUNSEL
CHARLES A. WAGNER III

*ALSO ADMITTED IN W. VA.
**ALSO ADMITTED IN TX.
***ALSO ADMITTED IN VA.

Karl W. Roth, Esq.
Roth Law Group, LLC
111 West Washington Street
Suite 1437
Chicago, IL 60602

Re:    Dan McDonald – Strata-G, LLC

Dear Mr. Roth:

We represent Strata-G, LLC and are in receipt of your letter dated May 14, 2008 addressed to Mr. Daniel Hurst, President of Strata-G.

In response to your letter, please be advised that all amounts due Mr. McDonald from Strata-G have been paid in full. Mr. McDonald was never granted any equity position or interest in Strata-G, nor is he entitled to any such interest. The employment agreement that you reference in your May 14 correspondence was superseded prior to its inception by a consulting arrangement, all with Mr. McDonald's full knowledge and consent. Pursuant to the consulting arrangement, Mr. McDonald became an independent contractor of Strata-G and was compensated as such (e.g., without deduction or withholding for federal or state employment or other taxes). Further, Mr. McDonald held himself out to the State of Tennessee (for worker's compensation insurance purposes) and third parties as an independent contractor and not as an employee of Strata-G.

We hope that the information contained in this correspondence addresses your questions, but if you require further information please do not hesitate to contact us.

Sincerely,

M. Douglas Campbell, Jr.
For the Firm

MDCJr/jg

Cc:    Daniel H. Hurst, President
       Strata-G, LLC

S:\WPFILES\2746\Roth.ltr (5-27-08).doc



EXHIBIT
D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| DANIEL B. McDONALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v.. | ) | Civil Action No. 08-cv-4088 |
| | ) | |
| STRATA-G, LLC and DANIEL H. | ) | |
| HURST, Individually, | ) | |
| | ) | |
| Defendants. | ) | |

### DECLARATION OF DANIEL H. HURST

1.      I am Daniel H. Hurst ("Hurst").  I reside in Knoxville, Tennessee.  I am over the age of

18, I have personal knowledge of the matters stated in this Declaration, and I am competent to

testify as to these matters in a court of law.

2.      I am the President of Strata-G, LLC ("Strata-G") and have served in that capacity since it

was formed.  Strata-G is a limited liability company, organized under the laws of Tennessee on

June 13, 2002.  Strata-G's principal offices and my office are located at 2027 Castaic Lane,

Knoxville, Tennessee, in Knox County.  I live in Knoxville, Tennessee and am a citizen of that

state.

3.      The voting members of Strata-G, LLC, as of the date of this Declaration, are Darrell

Daugherty and myself.  Mr. Daugherty lives in Coalfield, Tennessee, which is in Morgan

County, Tennessee.

4.      I first met Daniel B. McDonald, to the best of my recollection, in about July 2003 in

Knoxville, TN.  Subsequently, Andrew White, at the time a member of Strata-G, and I met with

EXHIBIT
2

McDonald again in Knoxville, and then made him an employment offer, which was presented to him in either Knoxville or nearby Loudon, Tennessee.

5.      Attached as Exhibit A hereto is a copy of a Consulting Agreement between Strata-G and Daniel B. McDonald ("McDonald"). I signed this Consulting Agreement after McDonald had signed it and I signed it in my former office in Knoxville, Tennessee.

6.      Strata-G never paid McDonald under the Employment Agreement. The Employment Agreement was replaced by the Consulting Agreement. McDonald was paid $102,000 in 2004 and he received his last payment under the Consulting Agreement in November, 2004. Strata-G reported that income to the Internal Revenue Service on a Form 1099, which is attached hereto as Exhibit B. McDonald was never an employee of Strata-G and he was never paid as an employee.

7.      I have reviewed the following description of acts and, to the best of my recollection, I myself have not engaged in any of the following acts in or directed to the State of Illinois, which relate to Dan McDonald, except as described below in paragraph 8 of this Declaration:

> (1) The transaction of any business within this State;
> (2) The commission of a tortious act within this State;
> (3) The ownership, use, or possession of any real estate situated in this State;
> (4) Contracting to insure any person, property or risk located within this State at the time of contracting;
> (5) With respect to actions of dissolution of marriage, declaration of invalidity of marriage and legal separation, the maintenance in this State of a matrimonial domicile at the time this cause of action arose or the commission in this State of any act giving rise to the cause of action;
> (6) With respect to actions brought under the Illinois Parentage Act of 1984, as now or hereafter amended, the performance of an act of sexual intercourse within this State during the possible period of conception;
> (7) The making or performance of any contract or promise substantially connected with this State;
> (8) The performance of sexual intercourse within this State which is claimed to have resulted in the conception of a child who resides in this State;
> (9) The failure to support a child, spouse or former spouse who has continued to reside in this State since the person either formerly resided

with them in this State or directed them to reside in this State;

(10) The acquisition of ownership, possession or control of any asset or thing of value present within this State when ownership, possession or control was acquired;

(11) The breach of any fiduciary duty within this State;

(12) The performance of duties as a director or officer of a corporation organized under the laws of this State or having its principal place of business within this State;

(13) The ownership of an interest in any trust administered within this State; or

(14) The exercise of powers granted under the authority of this State as a fiduciary.

8.      In March 2004, in my capacity as President of Strata-G, McDonald recommended to me that Strata-G rent a post office box in Chicago and Strata-G, through me, agreed to reimburse him for that. Attached as Exhibit C is a copy of the materials McDonald submitted for reimbursement and the Mailbox Agreement. Strata-G paid for that box for three months. In March 2005, McDonald submitted another request for reimbursement, a copy of which is attached as Exhibit D, however, Strata-G did not reimburse McDonald for that because he was not performing services for Strata-G at that time. I made one visit to Chicago in February 2004 with McDonald and there met Mike Tunney, who Strata-G later retained. Other than this visit, all other meetings with McDonald and his client prospects were in Knoxville, Oak Ridge, or Tellico Village, all in Tennessee, and possibly an additional meeting in Cincinnati, Ohio.

9.      All of Strata-G's books and records are located in the Eastern District of Tennessee. Because McDonald has requested an accounting, I would anticipate that Rick Oster, CPA, who prepared Strata-G's 2007 financial statements would be a witness. Mr. Oster lives and works in the Knoxville area. I would also expect that Strata-G's chief financial officer would be a witness. Gregg Woodhall serves in that capacity and he lives and works in the Knoxville area. Previously, Strata-G used the accounting firm of LBMC, which is located in the Knoxville area. Anita Rogers is also expected to be a witness and she works for Strata-G in Knoxville and

3

resides in the Knoxville area. The other members of Strata-G, to the extent they are called as witnesses, as noted above, all live in or nearby Knoxville, Tennessee.

10.    McDonald alleges in paragraph 12 of his Complaint that he was paid $10,000 per month by Strata-G. All such payments were made out of Strata-G's office in the Eastern District of Tennessee and were sent to McDonald at his Loudon, Tennessee address.

11.    I believe that McDonald maintains a residence in the Eastern District of Tennessee. Attached as Exhibit E is a copy of the publicly available tax records from Loudon County, Tennessee. This record reflects that McDonald owns property in the Eastern District of Tennessee, specifically at 418 Tanasi Way in Loudon, and, as the Mapquest map attached as Exhibit F establishes, that address is only 35 miles and 50 minutes from the federal courthouse in Knoxville.

I declare under penalty of perjury that the foregoing is true and correct. Executed on 7/22/08

_____
Daniel H. Hurst


Respectfully submitted,

s/ John P. Lynch, Jr.
John P. Lynch, Jr.
CREMER, KOPON, SHAUGHNESSY & SPINA, LLC
180 North LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 980-3018

4

McDonald Consulting Services

October 1, 2003

Dan Hurst
Strata-G, LLC
110 Perimeter Park, Suite F
Knoxville, TN 37922

Dear Mr. Hurst:

Pursuant to our conversation, I am pleased to offer my services to support Strata-G's needs. I will provide Business Development and Operational Assistance on a retainer basis for $10,000.00 per month.

Please acknowledge your acceptance of this proposal by signing and returning it. I look forward to supporting you and Strata-G.

Sincerely,

Daniel McDonald

_____

Daniel H. Hurst
President
Strata-G, LLC

**EXHIBIT**
*A*

Form **1099-MISC**    ☐ CORRECTED (if checked)    (keep for your records)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|---|
| Strata-G<br>2027 Castaic Lane<br>Knoxville TN 37932 | | $      0.00 | **2004** | |
| | | 2 Royalties | | |
| | | $      0.00 | Form 1099-MISC | 39-1908647<br>Department of the Treasury – IRS |
| | | 3 Other income<br>$      0.00 | 4 Fed. inc. tax withheld<br>$      0.00 | Copy B<br>For Recipient |

| PAYER'S Federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds | 6 Medical and health care payments | |
|---|---|---|---|---|
| 010712797 | 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 | $      0.00 | $      0.00 | |

| RECIPIENT'S name, address, and ZIP code | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
|---|---|---|---|
| McDonald Daniel<br><br>418 Tanasi Way<br><br>Loudon  TN 37774 | $      102000.00 | $      0.00 | |
| | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ► ☐ | 10 Crop insurance proceeds<br>$      0.00 | |
| | 11 | 12 | |

| Account number (optional) | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney | |
|---|---|---|---|
| | $      0.00 | $      0.00 | |

| 15 | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
|---|---|---|---|
| | $      0.00 | | $      0.00 |
| | $      0.00 | | $      0.00 |

4  BMISREC    NTF 2560362    Copyright 2004 Greatland/Nelco - Forms Software Only

Form **1099-MISC**    ☐ CORRECTED (if checked)    (keep for your records)

| PAYER'S name, street address, city, state, ZIP code, and telephone no. | | 1 Rents | OMB No. 1545-0115 | Miscellaneous Income |
|---|---|---|---|---|
| Strata-G<br>2027 Castaic Lane<br>Knoxville TN 37932 | | $      0.00 | **2004** | |
| | | 2 Royalties | | |
| | | $      0.00 | Form 1099-MISC | 39-1908647<br>Department of the Treasury – IRS |
| | | 3 Other income<br>$      0.00 | 4 Fed. inc. tax withheld<br>$      0.00 | Copy B<br>For Recipient |

| PAYER'S Federal identification number | RECIPIENT'S identification number | 5 Fishing boat proceeds | 6 Medical and health care payments | |
|---|---|---|---|---|
| 010712797 | 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 | $      0.00 | $      0.00 | |

| RECIPIENT'S name, address, and ZIP code | 7 Nonemployee compensation | 8 Substitute payments in lieu of dividends or interest | This is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction may be imposed on you if this income is taxable and the IRS determines that it has not been reported. |
|---|---|---|---|
| McDonald Daniel<br><br>418 Tanasi Way<br><br>Loudon  TN 37774 | $      102000.00 | $      0.00 | |
| | 9 Payer made direct sales of $5,000 or more of consumer products to a buyer (recipient) for resale ► ☐ | 10 Crop insurance proceeds<br>$      0.00 | |
| | 11 | 12 | |

| Account number (optional) | 13 Excess golden parachute payments | 14 Gross proceeds paid to an attorney | |
|---|---|---|---|
| | $      0.00 | $      0.00 | |

| 15 | 16 State tax withheld | 17 State/Payer's state no. | 18 State income |
|---|---|---|---|
| | $      0.00 | | $      0.00 |
| | $      0.00 | | $      0.00 |

**EXHIBIT**

tabbies

B

#1412 Strata-G

## 08 - Payroll Register With YTD (S109)

| | |
|---|---|
| Check Date : | 10/05/2004-1 |
| Period Range : | 09/01/2004 TO 09/30/2004 |
| Week Number : | Week #40 |

| Employee Name | | | Social Security Number | | | | Salary | | Frequency | | Check Number | | Check Date | | Check Type | Net Check |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Earnings Description | Rate of Pay | Current | | YTD | | | Deductions | | | YTD Amount | | | Check Amount | | Current Amount | YTD Amount |
| | Hours | Amount | Hours | Amount | | Description | Description | Current Amount | | Taxes Description | | | Current Amount | | | |

McDonald, Daniel B - 2040 - 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

| | | | | | TN TN | | | | | | 233629 | | 10/05/2004 | | Regular | 2,000.00 |
| 99 1099-Retaine | 0.00 | 2,000.00 | 0.00 | 102,000.00 | | 0.00 | | Monthly | | | | | 0.00 | | 0.00 | 0.00 |
| Check Totals: | 0.00 | 2,000.00 | 0.00 | 102,000.00 | | | | 0.00 | | | | | 0.00 | | 0.00 | |

Date Printed

Page 5

BMC Employment Partners
hone: (615) 369-5050
ix:   (615) 309-2789
-mail:

#1412   *tta-G*

| | | | | | | | 07 - Personnel Registe.    44) |
|---|---|---|---|---|---|---|---|
| | | | | | | | Check Date : | 12/03/2004-1 |
| | | | | | | | Period Range : | 11/01/2004 TO 11/30/2004 |
| | | | | | | | Week Number : | Week #49 |

| Emp ID | Division | SS Number | Primary Rate | Fed/St Status | SIT/SUI | Hire Date | 1099 or W2 | WorkComp | YTD Gross |
|---|---|---|---|---|---|---|---|---|---|
| Clock# | Branch | Telephone | Salary | Pay Frequency | Local Tax 1 | Birth Date | Ethnicity | NX Raise amt | YTD Hours |
| | Department | Dept Name | Avg. Hours | FT-PT/Exempt | Local Tax 2 | Raise Date | EIC | NX Raise % | YTD Deductions |
| | | Position | | Sex | Local Tax 3 | Term Date | Pension | | YTD Taxes |

| 2040 | | 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 | 0.00 | S99/S99 | TN/TN | 01/23/2004 | 1099 | | 102000.00 |
| McDonald, Daniel B. | | | | M | | 09/29/1948 | Not Applicable | | 0.0 |
| 418 Tanasi Way | | | | N,N | | | N | | 0.0 |
| Loudon, TN 37774 | | | | U | | | N | | 0.00 |

| | | | | :: | | | Not Applicable | | |
| | | | | M | | | N | | |
| | | | | / N | | | N | | |
| | | | | U | | | | | |

LBMC Employment Partners
phone: (615) 369-5050
fax:    (615) 309-2789
e-mail:

Date Printed: 12/01/2004 3:51:17 PM

Page 10

*#1412 Strata-G*

| W-2 1099 Edit (S162) | |
|---|---|
| Check Date : | 11/05/2004-1 |
| Period Range : | 10/01/2004 TO 10/31/2004 |
| Week Number : | Week #45 |

| Last | W2 or 1099 | SS# | W-2 Boxes | W-2 Override |
|---|---|---|---|---|
| First | | EE# | | Name Info |
| Address | | State | | |
| Zip | | SUI | | |

| | | | | | |
|---|---|---|---|---|---|
| McDonald | 1099 | 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 | Pension ? | N | |
| Daniel | | 2040 | Deferred Comp ? | N | |
| 418 Tanasi Way | | TN | Deceased ? | N | |
| Loudon | TN | TN | Statutory? | N | |
| 37774 | | | | | |

LBMC Employment Partners
phone: (615) 369-5050
fax:    (615) 309-2789
e-mail:

Date Printed:  11/01/2004 4:18:38 PM



```
++++++++++++ SALE ++++++++++++++
          Mail Boxes Etc.
Making Business Easier. Worldwide.
++++++++++++++++++++++++++++++++
Shift:0235 Drw:01 1D:301 Clerk:ADMIN
3/4/2004                 13:29:09
          Center #2027
       The UPS Store #2027
          207 East Ohio
         Chicago, IL 60611
       Phone 312-644-6245

Qty Description      Unit      Ext

 1 Mailbox Service
                  105.00MB   105.00

         Sub Total:          105.00
CHGO MAIL BOX RENT T:          1.84
       Total Sale:          106.84

       Credit Card:         106.84
          Change:             0.00

Visit our Web Site at: WWW.MBE.COM
```

**CASH RECEIPT**

Date 3-4-04                    1358683

Received From Dan McDonald

Address #392

Dollars $ 106.84

For 3 months (105.00)

MAIL BOXES ETC.
POSTAL AND BUSINESS SERVICES
Part #220120

| ACCOUNT | | | HOW PAID | | |
|---|---|---|---|---|---|
| AMT. OF ACCOUNT | | | CASH | | |
| AMT. PAID | | | CHECK | | |
| BALANCE DUE | | | MONEY ORDER CREDIT CARD | 106.84 | |

By R. Brzezic

EXHIBIT

C

tabbies

# The UPS Store

*3 months  105.00*

*(ITEM 3)*

## MAILBOX SERVICE AGREEMENT

CUSTOMER NAME: *DAN MCDONALD*
COMPANY: *STRATAG*
ADDRESS: *400 N. MCCLURG COURT          APT 3202*
HOME PHONE: _____  WORK PHONE: *312-686-1565* FAX: ____
E-MAIL ADDRESS: *MDKMCDONALD@AOL.com* MAIL BOXES ETC. CENTER NO.: ____
MAILBOX NUMBER: ____ *397* ____  SIZE OF MAILBOX: ____ *5XL*

1) This Mailbox Service Agreement ("Agreement") is made and entered into by the customer identified above ("Customer") for the use of and services related to a mailbox (the "Mailbox") at the Mail Boxes Etc. Center identified above (the "Center") under the terms set forth herein.

2) Customer agrees that Customer will not use the Center premises or any Center services for any unlawful, illegitimate or fraudulent purpose or for any purpose prohibited by U.S. postal regulations. Customer further agrees that any use of the Mailbox shall be in conformity with all applicable federal, state and local laws. Each individual or entity must complete a separate U.S. Postal Service Form 1583 ("Form 1583") to be authorized to receive mail or packages at the Mailbox. However, spouses may complete one Form 1583, as long as both spouses include their separate information on the Form.

3) This Agreement and Form 1583 shall remain confidential, except that this Agreement and Form 1583 may be disclosed upon request of any law enforcement or other governmental agency, or when legally mandated. Additionally, Customer acknowledges that pursuant to postal regulations the information required to complete Form 1583 may be made available by the U.S. Postal Service to the public if "yes" in block five (5) on Form 1583 is checked. Upon request, Customer agrees to complete all necessary documents, including Form 1583 and any required acknowledgment form relating to service of process. Customer further agrees to sign an updated version of this Agreement and Form 1583 upon request.

4) Possession of the Mailbox key shall be considered valid evidence that the possessor is duly authorized to remove any contents from the Mailbox. In the event of death or incapacity of Customer, the Center will require the appropriate documents from the Probate Court, the executor of the estate, the trustee or other similar person or entity before releasing mail or packages to a requesting party.

5) Customer agrees to pay an initial set-up fee of ____ *-0-* ____ and a refundable security/key deposit of ____ *$ 25.00 (20.00 refundable)* as well as applicable monthly service fees. The security/key deposit is refundable upon expiration, cancellation or termination of this Agreement, provided that Customer returns the key, key card and/or other similar device, and pays all sums owed to the Center. Mailbox service fees are all due and payable in advance and Customer agrees that the Center may hold mail and packages pending payment. There will be no prorations or refunds for cancellation of any service. Customer agrees to pay a late fee of *$10.00* if any payment is not received within five (5) days of when due. In the event the Mailbox lock is changed upon the request or fault of Customer, Customer agrees to pay a fee of *$5.00*. Mailbox service fees and other related fees stated herein are subject to change. In the event that Customer receives an unreasonable volume of mail or packages at the Mailbox according to the Center's reasonable judgment, the Center may require Customer to upgrade to a larger size mailbox and pay any additional charge. The Center reserves the right to increase the Mailbox service fees in the event that Customer adds additional individuals or entities to the names of those individuals or entities authorized to receive mail and packages at the Mailbox pursuant to Form 1583.

6) Upon expiration, cancellation or termination of this Agreement, the Center will:

   a. Re-mail (i.e., forward) Customer's mail for six (6) months, provided Customer pays the postage, packaging material, and forwarding fees in advance. Additionally, Customer must pay a monthly storage fee

©Mail Boxes Etc. USA, Inc.

Revised April 1999

1 of 3

of $30.00 per month 1, and $20.00 for months 2 through 6 in advance for the time period that mail is to be forwarded. It is Customer's responsibility to make arrangements with the Center to identify any mail forwarding needs prior to the expiration, cancellation or termination of this Agreement.

b. Discard or destroy any "Unsolicited Mail" (e.g., bulk mail; mail addressed as "occupant," "current resident" or similar designation; or coupons, advertising or other promotional material) delivered to or remaining at the Center.

c. Retain Customer's mail, other than Unsolicited Mail, at the Center for a period of thirty (30) days from the date of delivery or six (6) months after the expiration, cancellation or termination of this Agreement, whichever comes first, if Customer leaves no forwarding fees or forwarding address. After such time, any mail or package may be discarded or destroyed. In order to pick up any mail or package during the six (6) month period, Customer must pay a storage fee of $30.00 per month for the time period in which the Center holds the mail or package(s), plus a service fee of -0- for each time Customer visits the Center to pick up such items.

d. Refuse any package addressed to Customer delivered by any party other than the U.S. Postal Service, such as a commercial courier service.

7) Six (6) months after the expiration, cancellation or termination of this Agreement, the Center may:

a. Refuse any mail or package addressed to Customer and delivered to the Center.

b. Discard or destroy any of Customer's mail or package delivered to or remaining at the Center at such time.

8) The term of this Agreement shall be the initial period paid for by Customer and any renewal period paid for by Customer from time to time. Renewal of this Agreement for additional terms shall be at the Center's sole discretion.

9) Customer agrees that the Center may terminate or cancel this Agreement for good cause at any time by providing Customer thirty (30) days written notice. Good cause shall include but is not limited to: 1) Customer abandons the Mailbox; 2) Customer uses the Mailbox for unlawful, illegitimate or fraudulent purposes; 3) Customer fails to pay monies owed the Center when due; 4) Customer receives an unreasonable volume of mail or packages; 5) Customer engages in offensive, abusive or disruptive behavior toward other customers of the Center or the Center's employees; and 6) Customer violates any provision of this Agreement. Customer acknowledges that, for the purpose of determining good cause for termination of this Agreement as provided herein, the actions of any person authorized by Customer to use the Mailbox will be attributed to Customer.

10) Any written notice to Customer required or permitted under this Agreement shall be deemed delivered twenty-four (24) hours after placement of such notice in Customer's Mailbox or at the time personally delivered to Customer. In the event of a termination notice based upon abandonment of the Mailbox, notice shall be deemed delivered (a) on the next day after placing in the hands of a commercial courier service or the United States Postal Service for next day delivery, or (b) five (5) days after placement in the United States Mail by Certified Mail, Return Receipt Requested, postage prepaid, and addressed to Customer at Customer's address as set forth in Form 1583, or on the date of actual receipt, whichever is earlier.

11) As Customer's authorized agent for receipt of mail, the Center will accept all mail, including registered, insured and certified items. Unless prior arrangements have been made, the Center shall only be obligated to accept mail, or packages delivered by commercial courier services which require a signature from the Center as a condition of delivery. Customer must accept and sign for all mail and packages upon the request of the Center. Packages not picked up within 7 days of notification will be subject to a storage fee of $1.00 per day per package, which must be paid before Customer receives the package. In the event Customer refuses to accept any mail or package, the Center may return the mail or package to the sender and Customer will be responsible for any postage or other fees associated with such return. C.O.D. items will be accepted ONLY if prior arrangements have been made and payment in advance is provided to the Center.

12) Customer agrees to protect, indemnify, defend and hold harmless the Center, Mail Boxes Etc. USA, Inc., and their respective affiliates, subsidiaries, parent corporations, franchisees, officers, directors, agents and employees from and

©Mail Boxes Etc. USA, Inc.

Revised April 1999

\\EAGLE\VOL4\LEGAL\BGE\MISC99\MAIL\MSAGRT6.DOC

against any and all losses, damages, expenses, claims, demands, liabilities, judgments, settlement amounts, costs and causes of action of every type and character arising out of or in connection with the use or possession of the Mailbox, including without limitation, any demands, claims and causes of action for personal injury or property damage arising from such use or possession, from failure of the U.S. Postal Service or any commercial courier service to deliver on time or otherwise deliver any items (mail, packages, etc.), from damage to or loss of any package or mail, or to the Mailbox contents by any cause whatsoever, and from any violation by Customer of applicable federal, state or local laws.

13) Customer acknowledges and agrees that the Center is an independently owned and operated franchisee of Mail Boxes Etc. USA, Inc. ("Franchisor") and that Franchisor is not responsible for any acts or omissions of its franchisees.

14) CUSTOMER HEREIN AGREES THAT THE TOTAL AMOUNT OF LIABILITY OF THE CENTER AND FRANCHISOR, IF ANY, FOR ANY AND ALL CLAIMS ARISING OUT OF OR RELATED TO THIS AGREEMENT SHALL NOT EXCEED $100.00 REGARDLESS OF THE NATURE OF THE CLAIM. (INITIAL _____)

15) Customer **must** use the exact mailing address for the Mailbox without modification as set forth in Section three (3) of Form 1583. Mail received by Customer must bear a delivery address that contains at least the following elements, in this order:
   (1) Intended addressee's name or other identification. Examples: Joe Doe or ABC Co.
   (2) "PMB" and number. Example: PMB 234.
   (3) Street number and name or post office box number or rural route
   designation and number. Examples: 10 Main St. or P.O. BOX 34 or RR 1 BOX
   (4) City, state, and ZIP Code (5-digit or ZIP+4). Example: Herndon VA 22071-2716.

The Postal Service will return mail without a proper address to the sender endorsed "Undeliverable as Addressed."

16) Delivery by commercial courier services must be made to the Center street address only (and not to a P.O. Box). "P.O. Box" may be used only if it is part of Customer's "Caller Service" (arrangement for delivery of mail through Centers using a U.S. Postal Service address) address format. In such case, the "PMB" designation must also be used. Upon signing this Agreement, Customer shall provide two forms of valid identification, one of which shall include a photograph. This Agreement may not be amended or modified, except in a writing signed by both parties.

CUSTOMER SIGNATURE: _____     DATE: 3/04/0/

---

AUTHORIZED CENTER REPRESENTATIVE

SIGNATURE: _____     DATE: _____

HOW DID CUSTOMER HEAR ABOUT US? _____

©Mail Boxes Etc. USA, Inc.

Revised April 1999

\\EAGLE\VOL4\LEGAL\BGB\MISC\FAMAIL\MSAGRT6.DOC

United States Postal Service
## Application for Delivery of Mail Through Agent
See Privacy Act Statement on Reverse

BOX # 392

| 1. Date |
|---|
| 3/4/04 |

In consideration of delivery of my or our (firm) mail to the agent named below, the addressee and agent agree: (1) the addressee or the agent must not file a change of address order with the Postal Service upon termination of the agency relationship; (2) the transfer of my or our (firm) mail to another address is the responsibility of the agent; (3) all mail delivered to the agency under this authorization must be prepaid with new postage when redeposited in the mails; (4) upon request the agent must provide to the Postal Service all addresses to which the agency transfers mail; and (5) when any information required on this form changes or becomes obsolete, the addressee(s) must file a revised application with the Commercial Mail Receiving Agency (CMRA).

NOTE: The applicant must execute this form in duplicate in the presence of the agent, his or her authorized employee, or a notary public. The applicant provides the original completed signed Form 1583 to the Postal Service and retains a duplicate completed signed copy at the CMRA business location. The CMRA copy of Form 1583 must at all times be available for examination by the postmaster (or designee) and the Postal Inspection Service. The addressee and the agent agree to comply with all applicable postal rules and regulations relative to delivery of mail through an agent. Failure to comply will subject the agency to withholding of mail from delivery until corrective action is taken.

This application may be subject to verification procedures by the Postal Service to confirm that the applicant resides or conducts business at the home or business address listed in boxes 8 or 11, and that the identification listed in box 9 is valid.

| 2. Name in Which Applicant's Mail Will Be Received for Delivery to Agent (Complete a separate Form 1583 for EACH applicant. Spouses may complete and sign one Form 1583. Two items of valid identification apply to each spouse. Include dissimilar information for either spouse in appropriate box.) | 3. Address to Be Used for Delivery Including ZIP + 4 |
|---|---|
| STRATA G<br>DAN MCDONALD | PMB _____<br>207 E. OHIO<br>CHICAGO, IL 60611 |

| 4. Applicant Authorizes The UPS STORE (Name, address, and ZIP Code of agent) 207 E. OHIO ST. CHICAGO, ILLINOIS 60611 | 5. Will This Delivery Address Be Used for Soliciting or Doing Business With the Public? (Check one) ☒ Yes ☐ No |
|---|---|
| 6. This Authorization is Extended to include Restricted Delivery Mail for the Undersigned(s) *Dan McDonald* | 7. Name of Applicant<br>DANIEL B. MCDONALD |
| | 8. Home Address (Number, street, city, state, and ZIP Code)<br>D.B. MCDONALD    865-408-9196<br>418 TANASI WAY<br>↑ LOUDON, TN 37774 |
| 9. Two Types of Identification are Required. One Must Contain a Photograph of the Addressee(s). Agent Must Write in Identifying Information. Subject to Verification.<br><br>a.<br><br>b. | 10. Name of Firm or Corporation<br>STRATA*G |
| | 11. Business Address (Number, street, city, state and ZIP Code)<br>110 PERIMETER<br>KNOXVILLE, TN |
| Acceptable identification includes: driver's license; armed forces, government, or recognized corporate identification card; passport or alien registration card or other credential showing the applicant's signature and a serial number or similar information that is traceable to the bearer. A photocopy of your identification may be retained by agent for verification. | Telephone Number (865) 862-2905 |

| 12. Kind of Business<br>ENVIRONMENTAL<br>CONSULTING | 13. If Applicant is a Firm, Name Each Member Whose Mail is to Be Delivered. (All names listed must have verifiable identification. A guardian must list the names and ages of minors receiving mail at their delivery address.)<br>N/A |
|---|---|

| 14. If a CORPORATION, Give Names and Addresses of its Officers<br><br>N/A | 15. If Business Name of The Address (Corporation or Trade Name) Has Been Registered, Give Name of County and State, and Date of Registration.<br><br>N/A |
|---|---|

Warning: The furnishing of false or misleading information on this form or omission of material information may result in criminal sanctions (including fines and imprisonment) and/or civil sanctions (including multiple damages and civil penalties). (18 U.S.C. 1001)

| 16. Signature of Agent/Notary Public<br>Phadra Kingzou | 17. Signature of Applicant (if firm or corporation, application must be signed by officer, show title) *Dan McDonald* |
|---|---|

PS Form 1583, March 1999                                This form on Internet at www.usps.cor

# The UPS Store

# Mail Box Service Information

## Postal Service Package

♦ Actual Street address-not a P.O. Box number

♦ Call-in service to check for your mail

♦ 24 hour access to your mailbox with a $25 key deposit

♦ We accept packages from the USPS, UPS, Federal Express, etc.

♦ We will hold and forward mail if the box holder is out of town for any length of time

| BOX SIZES (14" Deep) | Rate/mo. | 3 Months | 6 Months | 1 Year |
|---|---|---|---|---|
| Regular (3 x 4.5) | $30.00 | $90.00 | $180.00 | $360.00 |
| Business (5 x 6) | $35.00 | $105.00 | $210.00 | $420.00 |
| Corporate (10.8 x 8.5) | $45.00 | $135.00 | $270.00 | $540.00 |

*We reserve the right to adjust the size of service based upon the amount of mail received and the frequency of pick-up.*

## SPECIAL OFFER

♦ With 6 months prepaid service——1 extra month FREE

♦ With 1 year prepaid service————3 extra month FREE

Example of your new address:
Name or Company
207 E. Ohio # 392
Chicago, IL 60611

POSTAL, BUSINESS AND COMMUNICATION SERVICES
207 E. Ohio, Chicago, Illinois 60611 Tel 312 644-6245 Fax 312 644-6246

The UPS Store #2027
207 E. Ohio
Chicago, Il 60611


Daniel McDonald
Stratag
400 N. McClurg Ct. #3202
Chicago, IL 60611


February 21, 2005

RE: Contract for Box Number 392  will expire on 03/04/2005

Dear Daniel McDonald:

It's time to renew your Mail Box services!

This reminder is to let you know that your service fees are due
soon. Your prompt attention to this invoice will be appreciated.


The amount due for the period 03/04/2005 through 06/04/2005 is $ 106.58

The breakdown is as follows:

```
    Rent                      35.00

    Mo. Total                 35.00
    Mo. sales tax             0.525
    Payment terms in months       3   Months

    Total Amount Due         106.58   PLEASE PAY THIS AMOUNT
                             ======   ----------------------
```

The payment amount is based on Quarterly payment terms as specified
in your contract.

Thank you very much for your business.



EXHIBIT
D

State of Tennessee ⬡ Comptroller of the Treasury

# Real Estate Assessment Data

**County Number: 053**          **County Name: LOUDON**          **Tax Year: 2008**

## Property Owner and Mailing Address

**Jan 1 Owner:**
MCDONALD DANIEL B ETUX
KATHLEEN P
418 TANASI WAY
LOUDON, TN 37774
USA

## Property Location

**Address:**  TANASI WAY 418

**Map:** 050D     **Grp:** H     **Ctrl Map:** 050D     **Parcel:** 011.00     **PI:**          **S/I:** 000

## Value Information

**Reappraisal Year:**          2005

**Land Mkt Value:**          $225,000
**Improvement Value:**          $232,600
**Total Market Appraisal:** $457,600
**Assessment %:**          25
**Assessment:**          $114,400

## General Information

| | | | |
|---|---|---|---|
| **Class:** | 00 - RESIDENTIAL | | |
| **City #:** | 957 | **City:** | TELLICO VILLAGE |
| **SSD1:** | 000 | **SSD2:** | 000 |
| **District:** | 01 | **Mkt Area:** | Q01 |
| **# Bldgs:** | 1 | **# Mobile Homes:** | 0 |
| **Utilities - Water:** | 1 - PUBLIC | **Utilities - Sewer:** | 1 - PUBLIC |
| **Utilities - Elec:** | 1 - PUBLIC | **Utilities - Gas:** | 0 - NONE |
| **Utilities - Gas Type:** | | **Zoning:** | |

## Subdivision Data

**Subdivision:**  TANASI COVES

**Plat Bk:**          **Plat Pg:**          **Block:**  3     **Lot:**  11

EXHIBIT
E

## Additional Description

01 055B C 055B 01100 000

## Building Information

**Building #  1**

| | | | |
|---|---|---|---|
| **Improvement Type:** | 03 - RESERVED | **Stories:** | 2 |
| **Base Area Sq. Ft.:** | 2,297 | **Aux Base Sq. Ft.:** | 1,186 |
| **Foundation:** | 02 - CONTINUOUS FOOTING | **Floor System:** | 04 - WOOD W/ SUB FLOOR |
| **Exterior Wall:** | 05 - SIDING ABOVE AVG | **Structural Frame:** | 00 - NONE |
| **Roof Framing:** | 02 - GABLE/HIP | **Roof Cover/Deck:** | 03 - COMPOSITION SHINGLE |
| **Cabinet/Millwork:** | 04 - ABOVE AVERAGE | **Floor Finish:** | 11 - CARPET COMBINATION |
| **Interior Finish:** | 07 - DRYWALL | **Paint/Decor:** | 04 - ABOVE AVERAGE |
| **Heat and A/C:** | 07 - HEAT & COOLING SPLIT | **Plumbing Fixtures:** | 7 |
| **Bath Tile:** | 01 - FLOOR ONLY | **Electrical:** | 04 - ABOVE AVERAGE |
| **Shape:** | 03 - U-SHAPED | **Quality:** | 02 - ABOVE AVERAGE |
| **Act Yr Built:** | 1993 | **Condition:** | 0 - SOUND |

**Building Areas:**

| Area: | | Sq Ft: | |
|---|---|---|---|
| **Area:** | BAS | **Sq Ft:** | 1,621 |
| **Area:** | USF | **Sq Ft:** | 676 |
| **Area:** | BMF | **Sq Ft:** | 700 |
| **Area:** | OPF | **Sq Ft:** | 24 |
| **Area:** | GRF | **Sq Ft:** | 462 |

## Extra Features

| Bldg/Card# | Type | Description | Units |
|---|---|---|---|
| 1 | FRPL | | 1 |
| 1 | WD DECK | 15X16 | 240 |
| 1 | WD DECK | 10X30 | 300 |
| 1 | PATIO | 10X12 | 120 |
| 1 | BOAT DOCK | 5X30 | 150 |
| | BOAT HSE | 15X32 | 480 |

## Sale Information

| Sale Date | Price | Deed Book | Page | Vac/Imp | Type Instrument | Qualification |
|---|---|---|---|---|---|---|
| 03/31/2000 | $380,000 | 251 | 611 | IMPROVED | WD | A |

| 04/13/1994 | $0 | 212 | 220 | | | |
|---|---|---|---|---|---|---|
| 10/13/1992 | $122,000 | 201 | 863 | VACANT | WD | H |
| 12/16/1985 | $0 | 158 | 656 | | | |

## Land Information

**Deed Acres:**    0.62      **Calc Acres:** 0.00      **Total Land Units:**   1.00

**Land Type:**   02 - RES WATER      **Soil Class:**      **Units:**      1.00

### View GIS Map for this Parcel

| New Search | Glossary of Terms | How to Search | Fact Sheet |
|---|---|---|---|
| Real Estate Assessment Data Home Page | Division of Property Assessments Home Page | Comptroller of the Treasury Home Page | State of Tennessee Home Page |

Driving Directions from 418 Tanasi Way, Loudon, TN to 800 Market St, Knoxville, TN

# MAPQUEST.



Get a little more mileage from every tank when you use BP gasoline with Invigorate.

For more details visit bpinvigorate.com »

bp

(i) **Note to Tennessee I-40 Travelers: Corridor Construction:**
At midnight on May 1, 2008, a short section of Interstate 40 between James White Parkway (exit 388A) and Hall of Fame Drive (exit 389) was closed for approximately 14 months for reconstruction.

**A: 418 Tanasi Way, Loudon, TN 37774-3128**

| | | |
|---|---|---:|
| [START] | 1: Start out going WEST on TANASI WAY toward TANASI LN. | 0.3 mi |
| ← | 2: Turn LEFT onto TANASI DR. | 0.4 mi |
| → | 3: Turn RIGHT onto TELLICO PKWY. | 5.8 mi |
| NORTH 321 | 4: Merge onto US-321 N/TN-73 W/TN-95 N. | 4.5 mi |
| NORTH 75 | 5: Merge onto I-75 N toward KNOXVILLE. | 19.9 mi |
| EAST 40 | 6: Take I-40 E toward KNOXVILLE. | 3.7 mi |
| WEST 158 | 7: Merge onto TN-158 W via EXIT 388A toward JAMES WHITE PKY. | 0.7 mi |
| EXIT | 8: Take the CUMBERLAND AVE exit toward DOWNTOWN/US-441 S. | 0.3 mi |
| SOUTH 11 | 9: Stay STRAIGHT to go onto W CUMBERLAND AVE SW/US-11 S/US-70 W/TN-1 S. | 0.1 mi |
| [END] | 10: End at 800 Market St Knoxville, TN 37902-2327 | |

Estimated Time: 50 minutes    Estimated Distance: 35.68 miles

**B: 800 Market St, Knoxville, TN 37902-2327**

**Total Time: 50 minutes    Total Distance: 35.68 miles**



EXHIBIT
_F_



All rights reserved. Use subject to License/Copyright  Map Legend
Directions and maps are informational only. We make no warranties on the accuracy of their content, road conditions or route usability or expeditiousness. You assume all risk of use. MapQuest and its suppliers shall not be liable to you for any loss or delay resulting from your use of MapQuest. Your use of MapQuest means you agree to our Terms of Use

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|---|
| **TENNESSEE EASTERN** | | | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 1,756 | 1,774 | 2,079 | 2,268 | 2,375 | 2,237 | U.S. | Circuit |
| | Terminations | | 1,801 | 1,961 | 2,331 | 2,241 | 2,121 | 2,145 | | |
| | Pending | | 1,861 | 1,908 | 2,067 | 2,292 | 2,270 | 1,976 | | |
| | % Change in Total Filings | Over Last Year | | -1.0 | | | | | 47 | 5 |
| | | Over Earlier Years | | | -15.5 | -22.6 | -26.1 | -21.5 | 77 | 7 |
| | Number of Judgeships | | 5 | 5 | 5 | 5 | 5 | 5 | | |
| | Vacant Judgeship Months** | | .0 | .6 | .0 | .0 | 16.5 | 17.0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 351 | 355 | 416 | 453 | 475 | 448 | 69 | 9 |
| | | Civil | 236 | 251 | 297 | 337 | 344 | 335 | 69 | 8 |
| | | Criminal Felony | 90 | 83 | 87 | 99 | 112 | 92 | 28 | 2 |
| | | Supervised Release Hearings** | 25 | 21 | 32 | 17 | 19 | 21 | 41 | 4 |
| | Pending Cases | | 372 | 382 | 413 | 458 | 454 | 395 | 46 | 7 |
| | Weighted Filings** | | 416 | 402 | 443 | 496 | 552 | 481 | 49 | 4 |
| | Terminations | | 360 | 392 | 466 | 448 | 424 | 429 | 66 | 8 |
| | Trials Completed | | 23 | 23 | 29 | 21 | 21 | 18 | 35 | 4 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.4 | 10.3 | 10.8 | 8.3 | 6.5 | 7.7 | 59 | 5 |
| | | Civil** | 12.4 | 12.7 | 11.2 | 11.7 | 11.0 | 11.6 | 85 | 9 |
| | From Filing to Trial** (Civil Only) | | 23.0 | 26.5 | 22.0 | 21.5 | 16.3 | 21.5 | 36 | 2 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 63 | 97 | 81 | 78 | 69 | 39 | | |
| | | Percentage | 4.6 | 6.6 | 5.0 | 4.3 | 3.7 | 2.3 | 50 | 5 |
| | Average Number of Felony Defendants Filed Per Case | | 1.6 | 1.6 | 1.4 | 1.4 | 1.6 | 1.5 | | |
| | Jurors | Avg. Present for Jury Selection | 36.56 | 34.29 | 36.35 | 37.80 | 40.52 | 32.59 | | |
| | | Percent Not Selected or Challenged | 31.4 | 27.9 | 28.1 | 33.5 | 40.0 | 34.0 | | |

| 2007 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1181 | 124 | 37 | 222 | 14 | 18 | 90 | 143 | 162 | 34 | 240 | 7 | 90 |
| Criminal* | 448 | 1 | 151 | 29 | 140 | 26 | 25 | 17 | 8 | 10 | 10 | 9 | 22 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

**EXHIBIT**

**3**

tabbies®

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | Numerical Standing | |
|---|---|---|---|---|---|---|---|---|---|
| **ILLINOIS NORTHERN** | | 2007 | 2006 | 2005 | 2004 | 2003 | 2002 | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | 8,422 | 8,093 | 9,056 | 10,584 | 11,126 | 11,135 | | |
| | Terminations | 7,929 | 8,255 | 8,805 | 11,461 | 10,888 | 10,709 | | |
| | Pending | 8,091 | 7,711 | 7,914 | 7,706 | 8,699 | 8,587 | | |
| | % Change in Total Filings — Over Last Year | | 4.1 | | | | | 27 | 2 |
| | % Change in Total Filings — Over Earlier Years | | | -7.0 | -20.4 | -24.3 | -24.4 | 81 | 6 |
| | Number of Judgeships | 22 | 22 | 22 | 22 | 22 | 22 | | |
| | Vacant Judgeship Months** | 15.8 | 5.7 | 12.0 | 9.6 | 22.1 | 17.8 | | |
| ACTIONS PER JUDGESHIP | FILINGS — Total | 382 | 367 | 412 | 481 | 505 | 506 | 62 | 4 |
| | FILINGS — Civil | 346 | 330 | 369 | 437 | 461 | 459 | 36 | 3 |
| | FILINGS — Criminal Felony | 24 | 26 | 34 | 32 | 38 | 39 | 93 | 7 |
| | FILINGS — Supervised Release Hearings** | 12 | 11 | 9 | 12 | 6 | 8 | 77 | 6 |
| | Pending Cases | 368 | 351 | 360 | 350 | 395 | 390 | 48 | 3 |
| | Weighted Filings** | 462 | 443 | 485 | 512 | 526 | 525 | 39 | 3 |
| | Terminations | 360 | 375 | 400 | 521 | 495 | 487 | 66 | 5 |
| | Trials Completed | 11 | 11 | 13 | 12 | 12 | 14 | 86 | 6 |
| MEDIAN TIMES (months) | From Filing to Disposition — Criminal Felony | 14.7 | 13.9 | 12.9 | 10.3 | 9.9 | 10.3 | 90 | 7 |
| | From Filing to Disposition — Civil** | 6.2 | 6.5 | 6.9 | 5.9 | 5.5 | 5.5 | 7 | 2 |
| | From Filing to Trial** (Civil Only) | 29.7 | 26.4 | 27.0 | 28.4 | 26.0 | 26.0 | 65 | 5 |
| OTHER | Civil Cases Over 3 Years Old** — Number | 456 | 500 | 388 | 337 | 442 | 461 | | |
| | Civil Cases Over 3 Years Old** — Percentage | 6.5 | 7.4 | 5.6 | 5.0 | 5.6 | 6.0 | 65 | 6 |
| | Average Number of Felony Defendants Filed Per Case | 1.7 | 1.8 | 1.9 | 1.9 | 1.7 | 1.7 | | |
| | Jurors — Avg. Present for Jury Selection | 45.20 | 45.07 | 51.46 | 39.36 | 45.57 | 43.63 | | |
| | Jurors — Percent Not Selected or Challenged | 31.8 | 30.9 | 36.9 | 31.0 | 37.3 | 34.8 | | |

| 2007 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 7620 | 118 | 150 | 701 | 53 | 55 | 1504 | 902 | 563 | 428 | 1614 | 23 | 1509 |
| Criminal* | 527 | 1 | 152 | 59 | 43 | 107 | 80 | 13 | 6 | 17 | 11 | 11 | 27 |

\* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."